IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    Civil No.: _____

           Plaintiff                    COMPLAINT - ACTION TO
                                             FORECLOSE A MORTGAGE

     -v-


April Jeffries
239B Rochester Street
Avon, New York 14414

Andrea Maniscalo
168 Sackett Road, Apt. 15
Avon, New York 14414

Matthew  Bennett
c/o April Jeffries
239 B Rochester Street
Avon, New York 14414

New York State Department of Finance
Tax Compliance Division -CO-ATC
P.O. Box 5149
Albany, New York 12205-5149

``JANE ROE'', it being the intention to
name all unkown persons who are heirs,
distributees, executors, administrators,
trustees, levisees, legatees,assignees,
lienors, creditors and successor's in interest
to same who may have an interest in the premises
that is the subject of this foreclosure proceedings
through the Estate of Sandra E. Bennett


JOHN DOE, MARY ROE AND XYZ
CORPORATION,
38 South Avenue
Avon, New York 14414

             Defendants
_____

The United States of America, a Sovereign, by Forsyth, Howe, O'Dwyer, Kalb & Murphy, P.C., Attorneys for the plaintiff, complains and alleges as follows:

1.    This Court has jurisdiction under the provisions of Title 28, United States Code, Section 1345.

2.    On or about 9/4/1996, at the request of the defendant, Sandra E. Bennett, (hereinafter referred to as the ``Debtor"), the plaintiff, the United States of America, acting by and through its agency, Farmers Home Administration, n/k/a Rural Housing Service, did lend to the Debtor, the sum of $77,780.00, which sum the Debtor did undertake and promise to repay, with interest at 7.25% in specified monthly installments.

3.    As evidence of the indebtedness, the Debtor, did execute and deliver to the plaintiff a Promissory Note dated 9/4/1996, a true copy of which is attached as Exhibit ``A''.

4.   In order to secure the payment of the indebtedness the Debtor, did execute, acknowledge and deliver to the plaintiff, a real property mortgage dated 9/4/1996, a true copy of which is attached as Exhibit "B".

5 The mortgage was duly recorded on 9/4/1996 in the Livingston County Clerk's Office in Liber 1233 of Mortgages at Page 31.

This loan was reamortized by Reamortization Agreement dated April 4, 2000 and executed by the Debtor on 5/25/2000. A copy of the Reamortization Agreement is attached hereto as Exhibit C.

6.    Plaintiff is now the owner and holder of the Promissory Note(s) and Mortgage(s).

7. Pursuant to the terms of certain Subsidy Repayment Agreement executed by a representative of the Farmers Home Administration and the Debtor, the interest described in the Promissory Note was reduced during each Agreement's effective period.  Pursuant to 42 U.S.C. 1490a, and the fifth paragraph of the first "WHEREAS" clause of the Mortgage, any interest credit assistance is subject to recapture upon the disposition of the property. A copy of said Subsidy Repayment Agreement is attached as Exhibit ``D''.

8. That Sandra E. Bennett died on 2/26/2004 in Livingston County.  A copy of her death certificate is attached hereto as Exhibit ``E''.  At the time of her death, her death certificate indicates that she was divorced.  Upon information and belief, no estate proceedings have been filed.

9. It is believed that April Jeffries, Andrea Maniscalo and Matthew Bennett are the surviving children of Sandra E. Bennett and that they are therefore, under the laws of in testate succession in the State of New York, the sole owners of the premises that is the subject of this foreclosure proceeding.

10.   Defendant ``Jane Roe'', is being named as it is the intention of the Plaintiff to name all unkown persons who are heirs, distributees, executors, administrators, trustees, levisees, legatees,assignees, lienors, creditors and successor's in interest to same who may have an interest in the premises that is the subject of this foreclosure proceedings through the Estate of Sandra E. Bennett.

11.   The ``Jane Roe'' defendant has been named as an unknown pursuant to CPLR 1024 in that Plaintiff has relied upon the obituary of Sandra E. Bennett, as published in a newspaper, The Democrat & Chronicle, to identify her surviving children.  This unknown is necessary as it is possible that the information in this obituary was inaccurate or incomplete, or that Ms. Bennett left a will not yet presented for probate that be quested the premises to other parties not named in this action.  A copy of the obituary from the Democratic & Chronicle is attached hereto as Exhibit ``F''.

12. The Debtor has breached and violated the provisions of the Promissory Note and Mortgage in that she did neglect and fail to pay the installments of principal and interest when due, despite due demand therefore and by failing to make payment of real property taxes when due, thus making it necessary for the plaintiff to pay the same to protect its interest.

13. By reason of the defaults described herein, plaintiff has elected to declare the entire sums secured by the mortgage to be due and payable.

14. There is now justly due and payable to the plaintiff, as of 2/22/2005, on the Promissory Note(s) and Mortgage(s) the following sums:

| | |
|---|---|
| Unpaid Principal (Note) | $78,399.20 |
| Unpaid Interest (Note) | $5,979.83 |
| Unpaid Principal (Advances) | $ 550.00 |
| Unpaid Interest (Advances) | $ 6.53 |
| Escrow | $2,207.12 |
| Late Charges | $ 34.02 |
| Interest Credit Recapture | $ 492.00 |
| Total | $87,668.70 |

together with interest at the rate of 7.25% per annum on principal and all advances from 2/22/2005.

15. Upon information and belief, plaintiff may be compelled to make additional advances for payment of taxes, hazard insurance water and sewer charges, or other municipal assessments maintenance, in order that it may protect and preserve security, but the nature and amount thereof is unknown to plaintiff at this time. Nevertheless, plaintiff seeks recovery thereof and therefore, together with interest thereon.

16. No other action or proceeding has been brought at law or otherwise for the recovery of said sums secured by the Promissory Note and Mortgage, or any part thereof.

17. The defendants, April Jeffries, Andrea Maniscalo, Matthew Bennett, New York State Department of Finance Tax Compliance Division CO-ATC, as setforth in Exhibit "G" have or may claim to have some interest in, or lien upon the mortgaged premises or some part thereof, which interest or lien, if any accrued subsequently to the lien of the United States mortgage and is subsequent thereto. No claim of personal liability on the mortgage debt is asserted against any of the defendants identified in this paragraph.

18. The true names of the defendants John Doe, Mary Roe and XYZ Corporation are unknown to the United States, those names being fictitious, but intending to designate tenants, occupants or other persons, if any, having or claiming any estate or interest in possession upon the premises or any portion thereof.

WHEREFORE, plaintiff demands judgment:

(a) That the defendants, or either or any of them, subsequent to the filing of the Notice of Pendency of this action, and every person whose conveyance or encumbrance is subsequent or subsequently recorded, be forever barred and foreclosed of all right, claim, lien and equity of redemption in the mortgaged premises;

(b) That the premises may be decreed to be sold according to law;

(c) That the amount due to the plaintiff on the promissory note and mortgage may be adjudged;

(d) That the moneys arising from the sale may be brought into Court;

(e) That the plaintiff may be paid the amount adjudged to be due to the plaintiff with interest thereon to the time of such payment, together with the costs and expenses of this action and the expenses of the sale, so far as the amount of such money properly applicable thereto will pay the same;

(f) And that the plaintiff may have such other and further relief as may be just and equitable.

DATED:      Rochester, New York  March 30, 2005

S/Gerald N. Murphy

FORSYTH, HOWE, O'DWYER,
KALB & MURPHY, P.C.
One Chase Square, Suite 1900
Rochester, NY 14604
(585) 325-7515
Fax: (585) 325-6287
Email: Murphy@forsythhowe.com

VERIFICATION

STATE OF NEW YORK    )                    ) ss:
COUNTY OF MONROE      )

Gerald N. Murphy, being duly sworn, deposes and says:

1.    I am an Attorney duly admitted to practice in the Federal Courts of the Western District of the State of New York and have read the foregoing Complaint.

2. The allegations of the Complaint are true, except those matters alleged-on information and belief, and those matters I believe to be true. The grounds of my knowledge and the sources of my information and belief are records of the Rural Housing Service, formerly known as the Farmers Home Administration and public records.

3.    This verification is made by me and not by plaintiff because the United States of America is a sovereign.

S/Gerald N. Murphy

FORSYTH, HOWE, O'DWYER,
KALB & MURPHY, P.C.
One Chase Square, Suite 1900
Rochester, NY 14604
(585) 325-7515; Fax: (585) 325-6287
Email: Murphy@forsythhowe.com

Sworn to and subscribed before me
On this day:
March 30, 2005

Notary Public

JANE E. KEHOE
Notary Public, State of New York
No. 01KE6094677
Qualified in Monroe County
Commission Expires June 23, 2007

**EXHIBIT A**

**PROMISSORY NOTE**

| TYPE OF LOAN | | STATE |
|---|---|---|
| | | NEW YORK |
| 502 | | COUNTY |
| | | LIVINGSTON |
| | | CASE NO. |
| | | 37-026-0130402854 |

Date ___September 4___, 19 __96__.

FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, ~~acting through the Farmers Home Administration~~

United States Department of Agriculture, (herein called the "Government") at its office in _____

3 Pulteney Square, East, Bath, New York  14810

THE PRINCIPAL SUM OF ___SEVENTY SEVEN THOUSAND SEVEN HUNDRED EIGHTY AND 00/100----------___

DOLLARS ($ ___77,780.00___ ), plus INTEREST on the UNPAID PRINCIPAL of

___SEVEN AND ONE QUARTER___ PERCENT ( ___7.25___ %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☐ I.   Principal and Interest payments shall be deferred. The interest accrued to _____, 19_____

shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in _____ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of

such new Principal herein $_____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II.   Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____

of each _____ beginning on _____, 19_____, through _____, 19_____,

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below;

☒ III.   Payments shall not be deferred. Principal and Interest shall be paid in ___396___ installments as indicated in the box below:

| $ 519.00 | on | October 4 | , 19 96 , and |
|---|---|---|---|

$ 519.00 _____thereafter on the ___4th___ of each ___month___

until the PRINCIPAL and INTEREST are fully paid except that the FINAL INSTALLMENT of the entire indebtedness

evidenced hereby, if not sooner paid, shall be due and PAYABLE ___THIRTY THREE___ ( ___33___ ) YEARS from the DATE of this NOTE. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with*FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

SUBSIDY REPAYMENT AGREEMENT: Borrower agrees to the repayment (recapture) of subsidy granted in the form of interest credits. Subsidy will be repaid when the borrower's account is settled by sale of the security property, refinancing or payment in full and will be calculated in accordance with regulations in effect at the time of settlement. Recapture is based on property appreciation and can equal all, some or none but never exceed the amount of subsidy received.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

WARNING: Failure to fully disclose accurate and truthful financial information may result in the termination of program assistance currently being received, and the denial of future program assistance under USDA's Debarment regulations, 7 CFR Part 3017. *being known herein as the former Farmers Home Administration (FmHA).

Presentment, protest, and notice are hereby waived.

_Sandra E. Bennett_

SANDRA E.  BENNETT          _(BORROWER)_          (SEAL)

_____          (SEAL)

_(CO-BORROWER)_

38 South Avenue

Avon, New York  14414

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 77,780.00 | 09/04/96 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL $ | 77,780.00 | 09/04/96 |

**EXHIBIT B**

Record & Return To:
Presutti & Coniglio, P.C.
LIBER 1233 PAGE 031
LIVINGSTON COUNTY CLERK
RECORDED

96 SEP -4 PM 3:33

US. ...IA
Fo m ...IA 1927-1 NY
(Rev. 11-92)

Position 5

1233/ 31-34

***CORRECTION***

# REAL ESTATE MORTGAGE FOR NEW YORK

THIS MORTGAGE is made and entered into by ___Sandra E. Bennett___

residing in ___Livingston___ County, whose post office address is

___168 Sackett Road, #9, Avon, NY  14414___ herein called "Borrower," and the United States of America, xxxxxxxxxxxx Farmers Home Administration United States Department of Agriculture, herein called the "Government," and:

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount Plus Non-Capitalized Interest | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| September 4, 1996 | $77,780.00 | 7.25% | XXXXXXXXXXXXXX *** September 4, 2029 |

(Non-capitalized interest only applies in the case of Farmer Program loans being serviced in accordance with 7 CFR Part 1951 Subpart S.)

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949 as amended, or any other statutes administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472 (g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

And the debt instruments executed at the time of loan closing constitutes an obligation on the part of the Government to disburse all funds at one time or in multiple advances, provided the funds are for purposes authorized by the Government at the time of loan closing. This obligatory commitment takes priority over any intervening liens or advances by other creditors regardless of the provisions of the State laws involved:

NOW, THEREFORE, (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower hereby grants, bargains, sells, conveys, assigns, mortgages and forever warrants unto the Government the following property, herein called "the Property" situated in the County of

___Livingston___ , State of New York.

*Being known herein as the former Farmers Home Administration

Livingston County Received
on this Mortgage
Basic Tax $ exempt
Trans. Tax $ exempt
S.M.A. $ exempt

Livingston County Clerk

NGSTON COUNTY CLERK
RECEIVED
NOV 19 PM 2:28

FmHA 1927-1 NY (Rev. 11-92)

LIBER 1233 PAGE 032

***This Correction Mortgage is being re-recorded to correct a mortgage dated September 4, 1996 and recorded in the Livingston County Clerk's Office in Liber 1233 of Mortgaes, Page 31. Said Mortgage is being corrected to show the correct the Final Installment Due Date, which Should be September 4, 2029.

## SCHEDULE A

**ALL THAT TRACT OR PARCEL OF LAND,** situate in the Town and Village of Avon, County of Livingston and State of New York, bounded and described as follows: Beginning at a point in the centerline of South Avenue, said point being 412± feet southerly from the intersection of the centerline of South Avenue with the centerline of West Main Street; thence (1) South 65° 35' 40" East for a distance of 24.80 feet to an iron pipe set on the assumed easterly street line of South Avenue, thence continuing along the same line of lands now or formerly owned by Helen S. Stewart, Liber 373 of Deeds, page 232, for a distance of 128.34 feet making a total for this course of 153.14 feet to an iron pipe; thence (2) South 27° 53' 30" West along the remains of an old fence marking the apparent west line of lands reputedly owned by the Village of Avon for a distance of 70.44 feet to an iron pipe; thence (3) North 66° 10' 00" West along the north line of lands now or formerly owned by John W. and Louis Reynolds, Liber 378 of Deeds, page 426, for a distance of 128.43 feet to an iron pipe set on the assumed easterly highway line of South Avenue, thence continuing along the same course for an additional 24.81 feet to the centerline of South Avenue; thence (4) North 27° 53' 30" East along the centerline of South Avenue for a distance of 72.00 feet to the point of beginning, containing 0.249 acres to centerline.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

LIBER 1232 PAGE 033

(b)    use the loan evidenced by the note for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan

(16) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) as holder of this mortgage, in any action to forclose it, have a receiver appointed, and (d) enforce any and all other rights and remedies provided herein or by present or future law.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby with interest to the date of sale, (d) inferior liens of record required by law to be so paid or duly approved and allowed by court order or otherwise, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, handicap, familial status, age or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, handicap, familial status, age or national origin.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Syracuse, New York 13210, and in the case of Borrower to the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

AND THAT, except to any extent that such construction conflicts with express provisions of this mortgage:

(24) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(25) This mortgage is also intended to be a financing statement within the meaning of Article 9 of the Uniform Commercial Code covering fixtures attached to the above-described real estate, now owned or hereafter required; and crops growing or to be grown on the above-described real estate.

** USDA, Rural Development in the Galleries of Syracuse, 441 S. Salina St. Suite 357, 5th Floor, Syracuse, NY 13202

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this ____fourth____ day of ____September____, 19 96.

In the presence of

_Sandra E. Bennett_ _____ (SEAL)
Sandra E. Bennett

_____    _____ (SEAL)

ACKNOWLEDGEMENT and examined

STATE OR TERRITORY OF ___New York___ }
                                      } ss:
COUNTY OF ___Livingston___            }

On the ___fourth___ day of ___September___, 19 96, before me, came

___Sandra E. Bennett___

to me known to be the individual(s) described in, and who executed the foregoing instrument, and acknowledged to me that

___she___ executed the same for the purposes therein contained.

STATE OF NEW YORK }
Livingston County } ss

_____
                                      Notary Public.

JAMES A. CONIGLIO
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN LIVINGSTON COUNTY
MY COMMISSION EXPIRES ___9/14/9?___

Recorded on the ___9th___ day of
Sept 19 96 at 3:33 o'clock
(SEAL) PM Liber ___1233___ of
mtg ___of page 31___
My commission expires ___9/11/??___

*U.S.GPO:1993-0-758-318

**EXHIBIT C**

# REAMORTIZATION AGREEMENT

Account Number                          Effective Date
    5145972                              April  4, 2000



The United States of America, acting through the Rural Housing Service,
United States Department of Agriculture (Lender), is the owner and
holder of a promissory note or assumption agreement (Note) in the
principal sum of $     77780.00, plus interest on the unpaid principal of
   7.25000% per year, executed by SANDRA E BENNETT                    and
_____, (Borrower) dated September  4, 1996
and payable to the order of the Lender.  The current outstanding balance
includes unpaid principal, accrued unpaid interest, unpaid advances and
fees.  The total outstanding balance is $    82665.50.

In consideration of the reamortization of the note or assumption
agreement and the promises contained in this agreement, the outstanding
balance is capitalized and is now principal to be repaid at  7.25000%
per annum at $     567.08 per month beginning        May 04, 2000 and on
the  4th day of each succeeding month until the principal
and interest are paid, except that the final installment of the
entire debt, if not paid sooner, will be due and payable on
September 04, 2029.

Subject to applicable law or to a written waiver by Lender, Borrower
shall pay to lender on the day monthly payments are due under the Note,
until the Note is paid in full, a sum ("Funds") for : (a) yearly taxes
and assessments which may attain priority over Lender's mortgage or deed
of trust (Security Instrument) as a lien on the secured property
described in the Security Agreement (Property); (b) yearly leasehold
payments or ground rents on the Property, if any; (c) yearly hazard or
property insurance premiums; and (d) yearly flood insurance premiums, if
any.  These items are called "Escrow Items."  Lender may, at any time,
collect and hold funds in an amount not to exceed the maximum amount a
lender for a federally related mortgage loan, may require for Borrower's
escrow account under the federal Real Estate Settlement Procedures Act
of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq.
("RESPA"), unless another law or federal regulation that applies to the
funds sets a lesser amount.  If so, Lender may, at any time, collect and
hold funds in an amount not to exceed the lesser amount.  Lender may
estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise
in accordance with applicable law.

The funds shall be held by a federal agency, including Lender, or in an
institution whose deposits are insured by a federal agency,
instrumentality, or entity.  Lender shall apply funds to pay the Escrow
Items.  Lender may not charge Borrower for holding and applying the
Funds, annually analyzing the escrow account, or verifying the Escrow
Items, unless Lender pays Borrower interest on the Funds and applicable
law permits the Lender to make such charge.  However, Lender may require

borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the funds.

Lender shall give to borrower, without charge, an annual accounting of the funds, showing credits and debits to the funds and the purpose for which each debit to the Funds was made. The funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

Unless changed by this agreement, all of the terms of the note or assumption agreement or the instruments that secure them, remain unchanged.

Upon default in the payment of any one of the above installments or failure to comply with any of the conditions and agreements contained in the above-described note or assumption agreement or the instruments securing it, the Lender, at its option may declare the entire debt immediately due and payable and may take any other action authorized to remedy the default.

_____ Date _May 25, 2000_
Borrower

_____ Date _____
Borrower

**EXHIBIT D**

```
RHCDS/SUBSIDY DATA                    650 286   7:56:52 11/29/04 TV420360

ACCT NBR  5145972    ML   PRI SSN 130402854 SANDRA E BENNETT
--------  ASSISTANCE ELIGIBILITY  -------  ---- PROGRAM/MORATORIUM STATUS ---
PMT ASSIST ELIGIBLE (Y/N)    YES       PROGRAM BORROWER          PRG
DEFER MORT ELIGIBLE (Y/N/C)  NO        UNDER MORATORIUM            NO
PMT ASSIST METHOD # (N/1/2)  METHOD 1  EFFECTIVE 00/00/00 EXPIRE 00/00/00
SUBSIDY RECAPTURE   (N/D/S)  SUBJECT TO RECAP
-------  AGREEMENT DATES / SUBSIDY AMOUNTS  --------    - PAID-TO DATES -
EFFECTIVE    EXPIRES PMT TYPE  PMT ASSIST  DEFER MORT   INT PD-TO   02/04/04
10/04/96  10/03/97 MONTHLY        41.00       0.00     PMT ASSIST  08/04/02
00/00/00  00/00/00                 0.00       0.00     AUDIT POPUP  N
00/00/00  00/00/00                 0.00       0.00
00/00/00  00/00/00                 0.00       0.00
00/00/00  00/00/00                 0.00       0.00
                 --------ASSISTANCE FINANCIAL HISTORY  -----------
ADMIN ADJUST RSN 0  ------- INTEREST  -----  ----- PRINCIPAL  -----
---- PROGRAM  ----   YR TO DATE    LN TO DATE   YR TO DATE   LN TO DATE
PAYMENT ASSISTANCE       0.00         0.00         0.00         0.00
DEFER MORT ASSIST        0.00         0.00         0.00         0.00
PRE  1/90 PMT ASST                    0.00                      0.00
------------------------- OTHER INFORMATION ------------------------------
OVRD 0 REAMORT: 1ST PMT DT 05/04/00 PRIOR P&I     519.00 FOR INT        0.00
                             OK INQUIRY ONLY
```

FmHA Instruction 1951-I
Exhibit A

UNITED STATES DEPARTMENT OF AGRICULTURE
~~FARMERS HOME ADMINISTRATION~~

Subsidy Repayment Agreement

09/04/96                                             09/04/96
Date of Note ~~XXXXXX~~   Amount of Note 77,780.   Date of mortgage ~~XXXXXX~~

Date of Note _____   Amount of Note _____   Date of mortgage _____

Type of assistance:                1. Interest credit /X/
                                   2. Homeownership Assistance
                                      Program /    /

Address of Property: 38 South Avenue

                     Avon, New York  14414


        BORROWER: BENNETT, Sandra E.

        CO-BORROWER:


1    This agreement entered into pursuant to 7 CFR 1951-I, between the United
States of America, ~~acting through the Farmers Home Administration (FmHA)~~
(herein called "the Government") pursuant to section 521 of Title V of the
Housing Act of 1949 and the borrower(s) whose name(s) and address(es) appears
above (herein sometimes referred to as "borrower"), supplements the note(s)
from borrower to the Government as described above, and any promissory
note(s) for loans made to borrower in the future by the Government.
Such future notes, when executed, will be listed below the signature line
of this Subsidy Repayment Agreement.

2    I (we) agree to the conditions set forth in this agreement for the
repayment of the subsidy granted me (us) in the form of interest credits
or Homeownership Assistance Program (HOAP) subsidy (hereinafter called
"subsidy").

3    I (we) agree that the real property described in the mortgage(s)
listed above is pledged as security for repayment of the subsidy received
or to be received.  I (we) agree that the subsidy is due and payable upon
the transfer of title or non-occupancy of the property by me (us).  I
(we) understand that the real estate securing the loan(s) is the only
security for the subsidy received.  I (we) further understand that I (we)
will not be required to repay any of the subsidy from other than the value
(as determined by the Government) of the real estate, mortgaged by myself
(ourselves) in order to obtain a Section 502 Rural Housing (RH) loan.

*being known herein as the former Farmers Home Administration (FmHA)


(9-27-79)  SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 2

4    I (we) understand that so long as I (we) continue to own the property
and occupy the dwelling as my (our) residence, I (we) may repay the principal
and interest owed on the loan and defer repaying the subsidy amount until
title to the property is conveyed or the dwelling is no longer occupied by
me (us). If such a request is made, the amount of subsidy to be repaid
will be determined when the principal and interest balance is paid. The
mortgage securing the FmHA RH loan(s) will not be released of record until
the total amount owed the Government has been repaid.

5    I (we) agree that Paragraph 6 of this agreement is null and
void should the property described in the mortgage(s) be voluntarily
conveyed to the Government or liquidated by foreclosure.

6    When the debt is satisfied by other than voluntary conveyance of the
property to the Government or by foreclosure, I (we) agree that sale
proceeds will be divided between the Government and me (us) in the
following order:

    (a)  Unpaid balance of loans secured by a prior mortgage as well as
    real estate taxes and assessments levied against the property which
    are due will be paid.

    (b)  Unpaid principal and interest owed on FmHA RH loans for the
    property and advances made by FmHA which were not subsidy and are
    still due and payable will be paid to the Government.

    (c)  I (we) will receive from the sale proceeds actual expenses
    incurred by me (us) necessary to sell the property. These may include
    sales commissions or advertising cost, appraisal fees, legal and
    related costs such as deed preparation and transfer taxes. Expenses
    incurred by me (us) in preparing the property for sale are not allowed
    unless authorized by the Government prior to incurring such expenses.
    Such expenses will be authorized only when FmHA determines such expenses
    are necessary to sell the property, or will likely result in a return
    greater than the expense being incurred.

    (d)  I (we) will receive the amount of principal paid off on the
    loan calculated at the promissory note interest rate.

    (e)  Any principal reduction attributed to subsidized interest
    calculations will be paid to the Government.

    (f)  I (we) will receive my original equity which is the difference
    between the market value of the security, as determined by the
    FmHA appraisal at the time the first loan subject to recapture of
    subsidy was made, and the amount of the FmHA loan(s) and any
    prior lien. This amount is _____-0-_____ and represents
    ___-0-___ percent of the market value of the security. (The

FmHA Instruction 1951-I
Exhibit A
Page 3

percent is determined by dividing my (our) original equity by
the market value of the security when the loan was closed.)  The
dollar amounts and percent will be entered at the time this agreement
is signed by me (us) and will be part of this agreement.

(g)  The remaining balance, after the payments described in (a) thru (f)
above have been paid is called value appreciation.  The amount of
value appreciation to be paid to the Government, in repayment or
the subsidy granted, is the lesser of (1) the full amount of the subsidy or
(2) an amount determined by multiplying the value appreciation by the
appropriate factor in the following table.

Average interest rate paid by me (us)

| No. of Months the Loan was Outstanding | 1% or Less | 1.1 to 2% | 2.1 to 3% | 3.1 to 4% | 4.1 to 5% | 5.1 to 6% | 6.1 to 7% | 7.1 or greater |
|---|---|---|---|---|---|---|---|---|
| 0 to 59 | .78 | .68 | .60 | .51 | .44 | .32 | .22 | .11 |
| 60 to 119 | .75 | .66 | .58 | .49 | .42 | .31 | .21 | .11 |
| 120 to 179 | .73 | .63 | .56 | .48 | .40 | .30 | .20 | .10 |
| 180 to 239 | .65 | .56 | .49 | .42 | .36 | .26 | .18 | .09 |
| 40 to 299 | .59 | .51 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 to 359 | .53 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 to 396 | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

(h)  I (we) will receive the amount of value appreciation less the
amount paid the Government as determined in (g) above.  I (we) will
also receive an additional amount in proportion to my original equity
by reducing the amount of value appreciation due to the Government by
the percent of my (our) original equity as shown in (f) above.

(i)  If I (we) am the recipient of HOAP, the amount of value appreciation
to be recaptured will be calculated as if I (we) had paid 1 percent
interest on the loan, unless the average interest rate paid by me (us)
was greater than 1 percent.  In such cases it will be determined based
on the average interest rate paid by me (us).

(j)  If this agreement is for a subsequent loan(s) only, the amount
of repayment determined in (g) above will be reduced by the following
percent:_____.  This percent will be determined by dividing the
amount of the loan(s) subject to recapture by the total outstanding
RH debt.  This percentage will be entered at the time I (we) sign this
agreement.

(k)  If this agreement is for more than one loan that is subject to
recapture, the subsidy repayment computations will be based on the total
subsidy granted on all loans.

(9-27-79)  SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 4

7    When a FmHA RH loan is repaid by other than foreclosure, voluntary
conveyance, or sale of property, the amount of subsidy to be repaid the
Government will be determined in the same manner as described in paragraph
6 of this Exhibit but based on the appraised value determined by FmHA
instead of sales price. In such cases, the subsidy due the Government
will remain a lien on the property until paid. It must be paid upon non
occupancy, sale, or transfer of title to the property.

8    I (we) have read and agree to the provisions of this agreement.


_____ Borrower
Sandra E. Bennett

_____ Co-Borrower

September ___ 1996
        Date signed


Accepted and Agreed to
By _____ (FmHA Official)
THOMAS B. HAURYSKI
Community Development Spec.    (Title)


_____
        Date


oOo

**EXHIBIT E**

NEW YORK STATE
DEPARTMENT OF HEALTH

## CERTIFICATE OF DEATH

| 1. NAME: FIRST | MIDDLE | LAST | 2. SEX | 3A. DATE OF DEATH | 3B. HOUR |
|---|---|---|---|---|---|
| Sandra | E. | Bennett | | 02 26 2004 | 6:10 A |

| 4A. PLACE OF DEATH | 4B. NAME OF FACILITY |
|---|---|
| | 38 South Avenue |

4C. LOCALITY: Avon

4D. COUNTY OF DEATH: Livingston

5. DATE OF BIRTH: 04 20 1950   6. AGE: 53   7A. CITY AND STATE OF BIRTH: Saranac Lake, New York

12. SOCIAL SECURITY NUMBER: 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

15A. USUAL OCCUPATION: Certified Nursing Assistant   Nursing

15C. NAME AND LOCALITY OF COMPANY OR FIRM: Avon Nursing Home Avon, New York

16A. RESIDENCE State or Country: New York   Livingston   Avon

16D. STREET AND NUMBER OF RESIDENCE: 38 South Avenue   14414

| 17. NAME OF FATHER | | | | 18. MAIDEN NAME OF MOTHER | | |
|---|---|---|---|---|---|---|
| Leo | C. | Sawyer | | Helen | M. | Courtney |

19A. NAME OF INFORMANT: April Jeffries   19B. MAILING ADDRESS: 239 B. Rochester Street, Avon, New York 14414

20. DATE: 03 02 2004   St. Agnes Cemetery   Avon, New York

23A. NAME AND ADDRESS OF FUNERAL HOME: Stephenson-Dougherty Funeral Home Inc.   350 Genesee St. Avon, N.Y. 14414   01724

23C. SIGNATURE OF FUNERAL DIRECTOR: Jeffrey T. Deragon   01292

24A. CERTIFICATION:
Joseph Calvorie, Coroner   02 26 04
3338 Weitzel Lane, Caledonia, NY 14423

Brian Smith MD 02 27 2004
BRIAN D. SMITH MD   138833   HIGHLAND HOSPITAL ROCHESTER NY

26A. Attending physician: 08 27 2003   02 26 2004   02 24 2004   02 26 04   7:10 am

30. DEATH WAS CAUSED BY:
PART I. IMMEDIATE CAUSE
Cholangiocarcinoma   18 M

---

I hereby certify that this is a true photo-copy of the death certificate of

*Sandra E. Bennett*

filed in the Village Office, Avon, New York.

*[signature]*
Registrar of Vital Statistics
Village of Avon, New York
District #2520

Dated: 2-27-04

**EXHIBIT F**

From Democrat & Chronicle   website

**"Bennett, Sandra E"**

Date published: 2/28/2004

"AVON: February 26, 2004 at age 53. She is survived by her parents, Leo and Helen Sawyer; her children, Andrea Maniscalco, Matthew Bennett, April (Michael) Jeffries; 3 grandchildren; sisters and brothers, Linda Stearns, Carol Baker, Sally Rose, Leo Sawyer Jr., James (Kathleen) Sawyer, Terry (Linda) Sawyer, Brian (Laura) Sawyer; several nieces and nephews.Friends may call Monday 2-4 and 7-9 PM at the Stephenson-Dougherty Funeral Home, Inc., 350 Genesee St., Avon where her Funeral Service will be held Tuesday, 2:00 PM. Interment, St. Agnes Cemetery, Avon. Memorials may be made to American Cancer Society."

(Daughter)

April Jeffries — 239 B Rochester St. Avon NY 14414

**EXHIBIT G**

Book: 000001 Page: 1692 1 of 1





**New York State Department of**
**Taxation and Finance**

Tax Compliance Division-CO-ATC
P O Box 5149
Albany NY 12205-5149

**Commissioner of Taxation and Finance**
against

SANDRA E BENNETT
38 SOUTH AVE
AVON, NY 14414-1234

*Book* 1
**Warrant**

Judgment
Creditor

Judgment
Debtor

Last Known
Address

Warrant ID:
E-016528866-W001-6

County of Judgment:
LIVINGSTON

Article of Tax Law:
22

**The people of the state of New York to:** J GABRIEL
an officer or employee of the Department of Taxation and Finance: **Whereas,** a tax has been found due to the
Commissioner of Taxation and Finance of the **state of New York** imposed by the above noted Article of Tax
Law from the debtor named, the nature and amount of which, together with the interest and penalties thereon,
are as follows:

| Assessment ID | Period Ending | Tax | Penalty | Interest | Assessment Total |
|---|---|---|---|---|---|
| L-019683967-5 | 12/31/00 | $ 2,183.00 | $ 109.10 | $ 117.76 | $ 2,409.86 |
| | | | | | 2002 FEB 25 PM 3:09 RECEIVED LIVINGSTON CLERK |
| | | | | Total amount due ➤ | $ 2,409.86 |

And whereas, said tax, interest and penalties now remain wholly unpaid:

**Now therefore, we command you** to file a copy of this warrant within five days after its receipt by you in the
office of the clerk of the county named above, for entry by him in the judgment docket, pursuant to the provisions
of the Tax Law.

**And we further command you,** that you satisfy said claim of said **Commissioner of Taxation and Finance** for said
tax with penalties and interest out of the real and personal property in said county belonging to said debtor and
the debts due to him at the time when said copy of this warrant is so docketed in the office of the clerk of such
county or at any time thereafter; and that only the property in which said debtor who is not deceased has an
interest or the debts owed to him shall be levied upon or sold hereunder; and return this warrant and pay the
money collected, to the Commissioner of Taxation and Finance of the state of New York.

Levy and collect total amount due shown above plus accrued interest and any additional penalties provided by law.

Current interest rate  6.00 % per year on $    2,409.86  from FEBRUARY  12, 2002
The interest rate may vary according to the Tax Law.

Warrant received at 9 o'clock A.M. on

DTF-977 (7/96)     00019    FEB 22 2002

issued
By _____
Deputy Tax Commissioner

for the Commissioner
of Taxation and Finance